UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 13-150-DLB-JGW

CAPTAIN JOSEPH BAER                                              PLAINTIFF

vs.                    <u>**MEMORANDUM OPINION AND ORDER**</u>

M/V MELVIN L. KING, et al.                                    DEFENDANTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.      Introduction**

Defendant Yazoo River Towing moves for a change of venue, arguing that this action should be transferred to the United States District Court for the Southern District of Mississippi, Western Division, because this Court is an improper venue and lacks personal jurisdiction over Yazoo. In the alternative, Yazoo argues that transfer would be convenient for the parties and witnesses and serve the interests of justice. In support of these assertions, Yazoo points out that its office, employees and records are located in Vicksburg, Mississippi. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1333.

**II.     Factual and Procedural Background**

Captain Joseph L. Baer (hereinafter "Captain Baer") is a Covington, Kentucky resident and former employee of Mississippi corporation Yazoo River Towing (hereinafter "Yazoo"). (Doc. # 8-1 at 3). Yazoo hired Captain Baer to work as a relief captain aboard the M/V Melvin L. King (hereinafter "M/V King"), located in Iberville Parish, Louisiana, from

1

July 10, 2013 to August 8, 2013. (*Id.*). However, Yazoo terminated Captain Baer's employment four days after he boarded M/V King. (*Id.*). This prompted Captain Baer to bring suit against Yazoo under the Seaman's Wage Act and general maritime law. (Doc. # 1). He also initiated *in rem* proceedings against M/V King. (*Id.*).

Yazoo responded by filing a Motion to Change Venue. (Doc. # 8). In support of this Motion, Yazoo President Patrick Smith swore an affidavit stating that Yazoo's office, records and most of its employees are located in or around Vicksburg, Mississippi. (Doc. # 8-1 at 1). Among these employees, Smith believes that he and five others have personal knowledge of the company's policies and/or the circumstances surrounding Captain Baer's termination. (*Id.* at 2). The affidavit indicates that Smith made the decision to hire and fire Captain Baer from the Vicksburg office and communicated this news to Captain Baer while he was working aboard the M/V King in Iberville Parish, Louisiana. (*Id.*). Smith also stated that neither Yazoo nor M/V King do business in the state of Kentucky. (*Id.*).

Captain Baer has also swore an affidavit, which he attached to his Response, countering three of Smith's assertions. (Doc. # 13-2). First, Captain Baer disagreed with Smith's contention that almost all of the witnesses live in Vicksburg, citing two potential witnesses who live in Kentucky and a third who resides in Missouri. (*Id.* at 2). Second, Captain Baer maintains that Smith hired him in Covington, Kentucky rather than Vicksburg, Mississippi. (*Id.* at 1). Third, Captain Baer believes that Yazoo does business with a number of Kentucky-based companies. (*Id.* at 2). Captain Baer also believes that Kentucky has a significant public interest in having this case adjudicated locally because he was a Kentucky citizen. (Doc. # 13 at 6).

A second sworn affidavit from Smith accompanied Yazoo's Reply Brief. (Doc. # 14; Doc. # 14-1). Although Smith agreed that Baer's potential witnesses resided in Kentucky and Missouri, he noted that one of the Kentucky witnesses lived in Paducah, which is almost equidistant from Covington and Vicksburg, and the other was merely Captain Baer's personal friend. (Doc. #14-1 at 1-2). Smith clarified that Captain Baer contacted Yazoo about employment opportunities from his stated home of Cincinnati, Ohio, but he was not actually hired until his arrival in Vicksburg. (*Id.*). The affidavit also indicates that Yazoo occasionally delivers to customers along the Ohio River, but Smith has no knowledge that Yazoo conducts business with the Kentucky companies cited in Captain Baer's affidavit. (*Id.*).

III.   **Analysis**

    A.   **Applicable Law**

When a plaintiff has a claim for relief "within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." Fed. R. Civ. P. 9(h)(1). Claims cognizable only in admiralty or maritime jurisdiction are considered admiralty or maritime claims for purposes of the rules cited in Rule 9(h), whether or not so designated. *Id.* Admiralty or maritime claims under Rule 9(h) are not civil actions for purposes of the federal venue statute. Fed. R. Civ. P. 82.

Plaintiff brings a Seaman's Wage Act claim for unpaid wages and a general maritime claim for breach of the warranty of seaworthiness. He also proceeds *in rem* to enforce a

3

maritime lien against M/V King. As acknowledged in Plaintiff's Complaint, these claims are cognizable only in admiralty or maritime jurisdiction. Plaintiff's claims are therefore properly considered admiralty or maritime claims for purposes of Rules 9(h) and 82. Accordingly, the Court will evaluate Defendant's Motion to Change Venue using venue rules specific to admiralty, rather than the general federal venue statute.

### B. Propriety of the Current Venue

General admiralty practice merges the venue and personal jurisdiction analyses. *Richoux v. R & G Shrimp Co.*, 126 F. Supp. 2d 1007, 1009 (S.D.T.X. Dec. 22, 2000); *Gipromer v. SS Tempo*, 487 F. Supp. 631, 633 (S.D.N.Y. Apr. 16, 1980). Therefore, venue lies wherever valid service could have been made upon the defendant.[1] *Gipromer*, 487 F. Supp. at 633.

---

[1] The test cited above applies only to *in personam* actions. By contrast, venue lies in an *in rem* action "where seizure of the vessel is made or other property is found or a substitute for the res exists." *Gipromer*, 487 F. Supp. at 633. Under these tests, proper venue for the *in rem* action may lie in a different district than proper venue for the *in personam* action, even though both actions arise out of the same event.

In *Continental Grain Co. v. The FBL-585*, the U.S. Supreme Court addressed a similar situation. 364 U.S. 19 (1960). In that case, Plaintiff brought an action against both a barge and its owners to recover for damage to cargo. Although the *in rem* claim could only be asserted in New Orleans, the Court held that joinder of the *in rem* claim against the barge with the claim against the owner itself would not preclude transfer of the action to a more convenient forum in Memphis, despite § 1404(a)'s language limiting transfer to districts in which the action could have been brought. The Court reasoned that "permit[ting] a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money" that venue transfer mechanisms were designed to prevent.

When the instant case was filed, the M/V Melvin King was located at a shipyard in Jeffersonville, Indiana, suggesting that venue for the *in rem* action would lie in Indiana. (Doc. # 8-1 at 1-2). However, this fact does not preclude the Court from transferring the *in rem* claim to the Southern District of Mississippi along with the *in personam* claim if doing so is in the interest of justice. For these reasons, the remainder of the opinion focuses on whether transfer of the *in personam* claim is appropriate.

Although admiralty and maritime law uses a specific rule to determine venue, no distinct rule exists to evaluate challenges to venue or requests to change venue. *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960). Instead, admiralty and maritime law applies the general federal statutes governing transfer of venue. *Id.* If venue is proper, the district court may, "[f]or the convenience of the parties and in the interest of justice, transfer the action to any district or division where it might have been brought." 28 U.S.C. § 1404(a). When venue is laid in the wrong division or district, the district court has discretion to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. To determine where the action could have been brought, one must refer back to the admiralty rule for determination of venue. *See Continental Grain Co.*, 364 U.S. at 27.

Defendant argues that this action should be transferred to the Southern District of Mississippi because this Court is an improper venue and lacks personal jurisdiction over Defendant. In support of this argument, Defendant points out that it does not do business in Kentucky. If the Court determines that venue is proper, Defendant maintains that transfer is appropriate for the convenience of the parties and witnesses, as well as the interests of justice, because the case has considerable ties to Vicksburg, Mississippi. Plaintiff counters that this Court is a proper venue and may assert personal jurisdiction over Defendant because Defendant has business connections with Kentucky-based companies. Plaintiff also believes that transfer is unwarranted because his choice of forum is entitled to considerable deference and Defendant has not put forth enough evidence to show that the Southern District of Mississippi would be a more convenient forum.

5

The parties support their respective arguments with affidavits that directly conflict as to whether Yazoo does business in Kentucky and whether Captain Baer was hired in Kentucky.  In order to address the intertwined venue and personal jurisdiction issue, the Court would first have to resolve these factual disputes through an evidentiary hearing.  However, the Court need not hold such a hearing because Defendant's Motion for Change of Venue can be properly evaluated without passing on the venue and personal jurisdiction inquiry.[2]  While a determination of proper or improper venue would normally aid the Court in deciding whether to analyze a transfer motion under § 1404 or § 1406, such a step is unnecessary in this instance because the Court finds that transfer is appropriate under either section.

### C.     Weighing the Transfer Factors

Evaluating a motion for transfer is a two-step process. *D.C. Micro Dev., Inc. v. Lange*, 246 F. Supp. 2d 705, 712-13 (W.D.Ky. 2003).  First, the court must determine whether the action "could have been brought" in the proposed transferee forum.  *Id.*  While this inquiry normally requires reference to 28 U.S.C. § 1391, the Court must look instead

---

[2]  Ordinarily, a determination of personal jurisdiction would be necessary to ensure that the district court has the authority to transfer the action.  While § 1406 allows for transfer regardless of personal jurisdiction, a district court only has the power to transfer the action pursuant to § 1404(a) if it has personal jurisdiction over the defendants.  *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962); *Pittock v. Otis Elevator Co.*, 8 F.3d 325 (6th Cir. 1993).  Personal jurisdiction and venue are two distinct inquiries, so a situation could arise in which the district court is a proper venue, but lacks the power to transfer the action to a more appropriate venue because it cannot assert personal jurisdiction over the defendants.  However, that concern is eliminated in this context because admiralty and maritime law merges the venue and personal jurisdiction inquiries.  Therefore, this Court is faced with only two possibilities.  Either the Court is a proper venue and has personal jurisdiction over Defendant, in which case the Motion to Change Venue is evaluated under § 1404(a), or the Court is an improper venue and lacks personal jurisdiction over Defendant, in which case the Motion is evaluated under § 1406.

to the venue rule applicable in admiralty and maritime cases and determine whether Defendant could have been served in the proposed transferee forum. *Id.*; *see also Continental Grain Co.*, 364 U.S. at 27. If the Court finds that Defendant could have been served in that forum, then the Court may proceed to consider whether transfer of the action is in the interests of justice. *See D.C. Micro Dev., Inc.*, 246 F. Supp. 2d at 712-13.

When evaluating motions to transfer pursuant to § 1404(a), courts must weigh the availability and convenience of witnesses and parties, the location of counsel, the location of pertinent books and records, the cost of obtaining the attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted and the plaintiff's choice of forum. *See Kentucky Speedway, LLC v. National Association of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D.Ky. Dec. 21, 2005). The plaintiff's choice of forum is typically entitled to considerable deference. *Id.* Defendant bears the burden of demonstrating that the forum sought is more convenient than the current forum. *Id.*

If the motion to transfer invokes 28 U.S.C. § 1406, the district court must determine whether the action should be dismissed or, if it is in the interest of justice, transferred to another district where it could have been brought. Although transfer is usually preferable to dismissal, the decision is committed to the sound discretion of the district court. *See, e.g., Stanifer v. Brannan*, 564 F.3d 455, 456 (6th Cir. 2009). Courts are not directed to consider the same factors used in a transfer analysis under § 1404(a), but since transfer pursuant to § 1406 must also be in the interests of justice, similar considerations often come into play. *See, e.g., Stanifer*, 564 F.3d at 456 (holding that denial of transfer of venue motion was in the interests of justice even though refiling would be barred by statute of

limitations because plaintiff had no colorable basis for filing action in Kentucky, since defendants resided in Alabama, accident occurred in Alabama, and personal jurisdiction over defendants was lacking in Kentucky).

In accordance with the two-part test cited above, the Court will first consider whether the action could have been brought in the proposed transferee forum, the Southern District of Mississippi, Western Division. The parties do not dispute that Defendant is a Mississippi corporation with its office, president, registered agent and a majority of its employees located in or around the Vicksburg area. These facts demonstrate that Defendant has a substantial presence in the Vicksburg region. Therefore, the Court finds that Defendant could have been served in the proposed transferee forum and may proceed to consider whether transfer is in the interest of justice.

Defendant's transfer argument relies heavily on the fact that six potential witnesses, including company president Patrick Smith, live and work in Vicksburg. Plaintiff counters that some of these witnesses are of limited utility because they did not actually witness his termination, but Defendant insists that they, as employees, have relevant information about company policies and procedures. Plaintiff further argues that the location of witnesses factor weighs in neither party's favor because two potential witnesses live in Kentucky and another resides in Missouri. While conceding that the Missouri witness is likely to have relevant information, Defendant argues that the Kentucky witnesses hardly weigh in favor of maintaining the action in the current forum. In support of this assertion, Defendant points out that one of the Kentucky witnesses lives in Paducah, which is only eighty miles farther from Vicksburg than it is from Covington, while the other is Plaintiff's personal friend and has no association with Defendant. From a numerical perspective, six potential witnesses

in Mississippi would outweigh two in Kentucky and one in Missouri.  However, the Court also finds it persuasive that, while the Mississippi witnesses are in a position to have relevant information, one of the Kentucky witnesses is of doubtful utility and the other would be no more inconvenienced by transfer of this action from one forum to another. Therefore, the Court finds that this factor weighs in Defendant's favor.

Plaintiff concedes that Defendant's only office, which houses the company's employment records, payroll records and vessel logs, is located in Vicksburg.  However, Plaintiff believes that this factor only weighs slightly in Defendant's favor because it would be relatively simple to copy the relevant records with standard office technology and provide them to Plaintiff.  Since the scope of discovery is unknown at this point, it is difficult for the Court to weigh this argument.  While advances in technology would facilitate the discovery process, producing these records and providing them to a Kentucky plaintiff could still be burdensome and time-consuming.  Accordingly, the Court finds that this factor weighs slightly in favor of Defendant.

These two factors have some bearing on the cost of ensuring witness attendance at trial and other trial expenses.  Since six witnesses and all company records are located in Vicksburg, substantial costs could accrue to the Defendant in litigating this action in Kentucky.  While Plaintiff would incur travel costs for himself and his witnesses, the numbers suggest that this would be a comparatively small financial burden.  Since the Court does not have the available information to assess whether one party is better able to bear its financial burden, the Court finds, based on the numbers, that this factor weighs slightly in Defendant's favor.

Defendant's president, Patrick Smith, made the decision to terminate Plaintiff's employment while Plaintiff was working aboard the M/V King in Iberville Parish, Louisiana. The first alleged wrong could be characterized as occurring in Vicksburg, where Smith made the decision to terminate Plaintiff's employment, or in Iberville Parish, Louisiana, where Plaintiff learned that he had been fired. The second alleged wrong, the unseaworthy condition of the vessel, would necessarily occur at the vessel's location at the time of Plaintiff's termination, again Iberville Parish. Either location would weigh in Defendant's favor because Iberville Parish is only sixty-five miles south of the Southern District of Mississippi. The location of the alleged wrong not only weighs in Defendant's favor, it also supports Defendant's assertion that relevant witnesses and evidence are likely to be located in or near the Southern District of Mississippi.

This action, which was filed on August 15, 2013, is still in the earliest stages of litigation. Defendant filed its Motion to Change Venue as a responsive pleading, so there is no doubt that Defendant has raised this issue in a timely manner. Under these circumstances, it is unlikely that undue delay would result from transferring the action to the Southern District of Mississippi. Furthermore, Plaintiff has made no showing that such transfer would prejudice him. The Court concludes that this factor also weighs in Defendant's favor.

Only two factors weigh in Plaintiff's favor. The first of these factors is the location of counsel, which carries only slight weight. Defendant has already employed an attorney from Louisville, in addition to counsel in Vicksburg, for the purpose of defending this suit in Kentucky. The second factor, by contrast, weighs heavily in Plaintiff's favor. Plaintiff chose to file this suit in the federal district court situated in the Eastern District of Kentucky,

and that decision is entitled to considerable deference. Plaintiff further notes that Kentucky has a strong public interest in having disputes involving its citizens adjudicated locally.

Although the Court accords substantial weight to Plaintiff's choice of forum, the Court simply cannot conclude that this factor alone justifies litigating the action in the Eastern District of Kentucky. After all, the location of witnesses, location of records, location of the alleged wrong, costs of trial and witness attendance, and concerns of undue delay or prejudice all weigh in favor of transferring this action to the Southern District of Mississippi. These considerations drive the Court to find that transfer is appropriate, for the convenience of the parties and witnesses and in the interests of justice, under either § 1404(a) or § 1406.

**IV.   Conclusion**

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion to Change Venue (Doc. # 8) is **granted**.

**IT IS FURTHER ORDERED** that this action be **transferred** to the United States District Court for the Southern District of Mississippi, Western Division.

This 12th day of December, 2013.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\Covington\2013\13-cv-150 MOO Granting Mtn to Transfer.wpd